**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

THE HIPAGE COMPANY, INC.,

       Plaintiff,

v.                                     ACTION NO. 2:08cv336

ACCESS2GO, INC.,

       Defendant.

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

This case was referred for a report and recommendation on Access2Go, Inc.'s ("Access2Go's") Motion to Dismiss, or in the alternative, Motion to Transfer [Doc. No. 3].  For the reasons set forth below, the Court recommends GRANTING Access2Go's Motion to Dismiss.

## I.  FACTUAL AND PROCEDURAL HISTORY

This matter arises from a written agreement for telecommunications services.  The Hipage Company, Inc. ("Hipage") is a Virginia corporation in the business of freight shipping.  In July 2007, Hipage instructed its Director of Information Technology, Chris Unger ("Unger"), to obtain quotes

for a new telecommunications provider.  Notice of Removal [Doc. No. 1], Ex. 1 ("Compl.") ¶¶ 3, 5.

Unger contacted several providers, but did not have authority to enter into any contract on behalf of

Hipage.  Compl. ¶¶ 6-7.  Unger was contacted by Access2Go, an internet and communications

provider based in Illinois.  Comp. ¶¶ 2, 8-9.  Access2Go's agent provided initial price estimates, but

informed Unger that Access2Go needed additional information in order to issue a firm price quote.

Compl. ¶ 10.  Access2Go then forwarded to Hipage a Service Agreement and a series of Service

Orders.  Compl. ¶ 15.  The Service Agreement contained the following forum selection clause:

> "By its execution and delivery of this Service Agreement, each of the parties hereby
> irrevocably and unconditionally agrees for itself that any legal action, suit or
> proceeding against it with respect to any matter under or arising out of or in
> connection with this Service Agreement must be brought in the Circuit Court of
> Peoria County, Illinois or in the Federal District Court for the Central District of
> Illinois, which courts shall have exclusive jurisdiction of all matters arising out of or
> in connection with this Service Agreement."

Def.'s Br. [Doc. No. 4], Ex. 1 ("Illinois Lawsuit"), Ex. A ¶ 19.  Unger executed the Service

Agreement and the Service Orders, but Hipage alleges that (1) Access2Go's agent represented to

Unger that the execution of the agreements would not create a binding contract, and (2) Unger

expressly informed the agent that he did not have authority to enter into a binding contract.  Compl.

¶¶ 16-17.

Two months after the execution of the contract, Hipage declared the contract invalid and

began turning away Access2Go's service technicians.  Access2Go filed suit for breach of contract

against Hipage in the Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County.  [Doc. No.

4], Ex. 1.  This Illinois Lawsuit was filed on or about May 9, 2008, and Hipage received service on

June 12, 2008.  Hipage then removed the Illinois Lawsuit to the United States District Court for the

Central District of Illinois on July 11, 2008.  After removal, Hipage filed a motion to dismiss on the

grounds of lack of personal jurisdiction, but at the time of oral argument, that motion remained pending.

On June 24, 2008, after having received notice of the Illinois Lawsuit, Hipage filed a complaint in the Circuit Court for the City of Norfolk, seeking a Declaratory Judgment that no contract exists between the parties.  Notice of Removal [Doc. No. 1], Ex. 1.  Access2Go removed the case to this Court on July 18, 2008.  [Doc. No. 1].  On July 28, 2008, Access2Go filed a Motion to Dismiss or, in the alternative, a Motion to Transfer. [Doc. No. 3].  This Court heard oral argument on the motion on September 24, 2008.   Richard H. Ottinger, Esq. and Ethan G. Ostroff, Esq. represented the Plaintiff, Hipage, and Julie T. Burrow represented the Defendant, Access2Go.  The Official Court Reporter was Sharon Borden.

## II. ANALYSIS

Access2Go has moved to dismiss Hipage's Complaint under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6)[1].  In the alternative, Access2Go has moved to transfer the case to the United States District Court for the Central District of Illinois.[2]

### A.  Forum Selection Clause

Access2Go asserts this Court should dismiss the Complaint under Rule 12(b)(3) for improper

---

[1] It is unclear how Rule 12(b)(6) relates to the Motion to Dismiss.  First, Rule 12(b)(3) clearly governs the argument to dismiss on grounds of enforcing the forum selection clause.  *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006).  Second, the argument that this Court should use its discretion to dismiss an improper declaratory action is grounded in the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See Watkins Strategy & Res. Group, LLC v. WLC, LLC,* 433 F. Supp. 2d 778, 781 (S.D. Miss. 2006).

[2] In its motion, Access2Go did not clearly state the procedural basis for the transfer.  This Report will address the issue under 28 U.S.C. § 1404(a) and § 1406(a).

venue, based on the forum selection clause in the Service Agreement.  At its heart, Access2Go's argument is based on the assumption that an exclusive forum selection clause, if valid, renders venue improper in a non-designated forum, even if the non-designated forum would otherwise be proper. This assumption, however logical, is not accepted by all courts.  Although the U.S. Supreme Court has repeatedly held that forum selection clauses in private contracts are enforceable, the manner and "procedural vehicle by which they should be enforced . . . is the subject of some confusion."  *BHP Int'l Inv., Inc. v. Online Exch., Inc.*, 105 F. Supp. 2d 493, 495 (E.D. Va. 2000).

The ambiguity underlying enforcement flows from a set of incongruous Supreme Court cases. In *M/S Bremen v. Zapata Off-Shore Co.*, the Court announced for the first time that forum selection clauses are enforceable, unless "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  407 U.S. 1, 15 (1972).  In *Stewart Org. Inc. v. Ricoh Corp.*, however, the Court suggested in dicta that a forum selection clause, even if enforceable under the *Bremen* standard, is not necessarily enforceable upon a motion to dismiss.  487 U.S. 22, 28-29 n.8 (1988)("The parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue . . . because respondent apparently does business in the [district].")  The motion to dismiss was not at issue in the case, but the majority opinion cited 28 U.S.C. § 1391(a) for the proposition that "venue [is] proper in judicial district in which corporation is doing business."  *Id.* In other words, the Court's footnote implies that an enforceable forum selection clause does not automatically invalidate a venue, if that venue is proper under § 1391(a).

The *Stewart* Court then addressed the motion to transfer, the central issue in the case, and further subjugated the forum selection clause to the discretion of the district court.  The opinion holds that 28 U.S.C. § 1404(a) governs the analysis, and the forum selection clause is but one "significant"

factor in an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 29. Thus, following *Stewart*, the appropriate method of enforcement was likely transfer, rather than dismissal, but any transfer was subject to broad discretion of the district court.

Three years later, however, the Supreme Court revived strict enforcement of valid forum selection clauses. In *Carnival Cruise Lines, Inc. v. Shute*, the Court held that the forum selection clause included in the cruiseline's passage contract ticket was reasonable under the relaxed standard of *M/S Bremen*. 499 U.S. 585 (1991). Specifically, the majority opinion relied on *M/S Bremen's* presumption in favor of enforcing forum selection clauses, which requires the party challenging enforcement to "bear a heavy burden of proof [of unfairness]." *Id.* at 592, 595. The *Carnival Cruise Lines* Court, however, neither applied nor overruled the balancing test in *Stewart*. As a result, even though the Court's reversal of the Ninth Circuit's decision effected a dismissal,[3] the opinion did not specifically address either (1) whether dismissal, as opposed to transfer, is the proper procedural vehicle for enforcing a forum selection clause, or (2) whether a forum selection clause trumps 28 U.S.C. § 1391(a) in determining whether venue is proper.

The U.S. Court of Appeals for the Fourth Circuit has identified the procedural vehicle for dismissal, but arguably has not resolved the remainder of the issues. In 2006, the Fourth Circuit held

---

[3] Cruise passengers brought suit in the Western District of Washington. Carnival moved for summary judgment on grounds of both (a) lack of personal jurisdiction and (b) enforcement of the Florida forum selection clause. The district court granted summary judgment for lack of personal jurisdiction, but did not address the forum selection clause issue. On appeal, the Ninth Circuit reversed, holding that (a) the district court had personal jurisdiction and (b) the forum selection clause was not enforceable. The U.S. Supreme Court reversed the Ninth Circuit with respect to the forum selection clause, but did not address the issue of personal jurisdiction. Thus, the Ninth Circuit, on remand, should have contemplated the remedy of enforcement. Instead, however, the Ninth Circuit merely affirmed the district court's dismissal in a one-sentence opinion. *Shute v. Carnival Cruise Lines*, 934 F.2d 1091 (9th Cir. 1991).

that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). The *Sucampo* court affirmed the dismissal, reasoning that because "the forum selection clause . . . governs Sucampo's complaint," the district court "was thus an improper venue." *Id.* at 551. The scope of *Sucampo*, however, is limited in two respects. First, the case does not establish that dismissal takes precedence over transfer, because transfer was not possible. The forum selection clause designated the Tokyo District Court as the exclusive forum. *Id.* at 547, 551. Since the federal courts lack authority to transfer cases to foreign courts, the only available method of enforcement was dismissal. 28 U.S.C. § 1404(a),(c) and § 1406(a),(c); *see, e.g., Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996)(ordered dismissal after finding that the forum selection clause for British courts was enforceable). Second, even after *Sucampo*, a forum selection clause does not necessarily trump the framework of 28 U.S.C. § 1391(a) in determining whether venue is proper. The *Sucampo* decision based the dismissal on enforcement of the forum selection clause, but the opinion made no mention of § 1391(a). *Sucampo*, 471 F.3d at 551. Moreover, venue was likely improper under § 1391(a), as well.[4] Therefore, *Sucampo* does not necessarily eliminate the discretion of a district court judge to refuse enforcement of a forum selection clause if venue is deemed proper under § 1391(a).

In the wake of *Sucampo,* two district courts have employed two distinct approaches to the issue of enforcement. In *Fixture Specialists, Inc. v. Global Construction Co.*, the U.S. District Court

---

[4] The facts detailed in the *Sucampo* opinion do not suggest that (1) a substantial part of the events occurred in the district of filing, (2) the defendant resides in the district of filing, or (3) the defendant would be subject to personal jurisdiction in the district of filing. *Sucampo*, 471 F.3d at 546-47.

for the Eastern District of Virginia stated that "a forum selection clause does not affect the Court's analysis of whether venue is proper."  2007 WL 3468997, at *2 (E.D.Va. 2007).  Instead, citing *Stewart*, the court applied § 1391(a) and concluded that venue was improper.  *Id.*  "[I]n the interest of justice," however, the court denied the motion to dismiss and transferred the suit to the federal district court mandated by the forum selection clause.  In sum, the *Fixture Specialists* decision (1) removed the forum selection clause from the determination of whether venue is proper, but (2) considered the clause as a significant factor in the decision to transfer, as the Supreme Court outlined in *Stewart*.

In *Silo Point II LLC v. Suffolk Construction Co.*, on the other hand, the District of Maryland treated the forum selection clause as dispositive of whether venue is proper.  2008 WL 4366382 (D.Md. 2008).  There, the forum selection clause designated Maryland *state* court as the exclusive forum for litigation, but the plaintiff brought suit in a *federal* district court in Maryland.  *Id.* at *1-2.  Since all alleged events took place in Maryland, it is clear that venue was proper under § 1391(a).  The *Silo Point* court held that the forum selection clause rendered the venue improper, however, and granted the defendant's motion to dismiss under Rule 12(b)(3).  *Id.* at *4-5.

In light of the aforementioned authority, this Court adopts the approach that a valid forum selection clause renders venue improper.  First, *Carnival Cruise Lines* punctuates Supreme Court precedent with the position that a forum selection clause, if reasonable under *M/S Bremen*, is strictly enforceable.  499 U.S. at 594-95.  And if the clause is enforceable, the clause should render venue improper.  For example, in *Carnival Cruise Lines*, the plaintiff filed suit in the Western District of

Washington, which was likely a proper venue under the federal venue statute.[5]  The Supreme Court's decision effected a dismissal based on an enforceable forum selection clause, however, which suggests that the forum selection clause rendered venue improper.  *Carnival Cruise Lines*, 499 U.S. at 594-95; *see also* David Marcus, *The Perils of Contract Procedure: A Revised History of Forum Selection Clauses in the Federal Courts*, 82 Tul. L. Rev. 973, 1030 ("The only possible problem with the plaintiff's original forum was that the cruise ticket designated a different one. [Carnival's] forum selection clause thus must have rendered the forum where the plaintiff first filed 'wrong.'").  Even though the Supreme Court employed a balancing test in its *Stewart* opinion, *Stewart* preceded *Carnival Cruise Lines*, and a motion to dismiss was not even at issue in *Stewart*.  Thus, the forward thrust of Supreme Court precedent suggests that a forum selection clause, if deemed enforceable under the framework of *M/S Bremen*, renders venue improper.

Second, the Fourth Circuit recognizes the same causal relationship.  The first paragraph of the *Sucampo* decision states: "Because we find that the safety agreement . . . [was] governed by the forum-selection clause requiring Sucampo to bring suit in Japan, we affirm the decision of the district court [to dismiss the case]."  471 F.3d at 545.  The opinion clearly upheld this dismissal "on the basis of improper venue."  *Id.* at 550.  More importantly, the court deemed venue improper solely because the forum selection clause was valid.  *Id.* at 550-51.  Unlike the district court in *Fixture Specialists*, the Fourth Circuit did not include § 1391(a) in its analysis of whether venue was proper.  As a result,

---

[5] Carnival Cruise Lines was the sole defendant.  When there is only one defendant, venue is proper in a district in which the defendant "resides."  28 U.S.C. § 1391(a).  Under § 1391(c), "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Carnival is a global cruise company and its contacts with customers in the state of Washington are likely substantial.  Thus, pursuant to § 1391, venue was likely proper in the Western District of Washington.

the *Silo Point* decision is more consistent with controlling precedent, which instructs that a forum selection clause, if enforceable under *M/S Bremen*, compels a dismissal for improper venue under Rule 12(b)(3).

Next, we turn to the remaining issue of whether the district court may order a transfer, even if dismissal is appropriate for improper venue. Supreme Court precedent offers no meaningful guidance. In *M/S Bremen*, the parties had contracted for an exclusive forum in London; thus, the Court did not have the authority to transfer. 407 U.S. 1; 28 U.S.C. § 1404(a),(c) and § 1406(a),(c). The *Stewart* decision's reliance on § 1404(a) is not instructive, because the parties had stipulated that a dismissal for improper venue was not appropriate. 487 U.S. at 28-29 n.8. Lastly, even though the *Carnival Cruise Lines* Court had authority to transfer the case to a federal district court in Florida, the Court's opinion ignored the issue of transfer.

The lower courts consistently address transfer as a matter of judicial discretion, even when dismissal is available on grounds of improper venue. These courts are divided, however, as to whether the analysis of transfer is governed by 28 U.S.C. § 1404(a), or § 1406(a). Several jurisdictions hold that because an enforceable forum selection clause renders a non-designated venue improper, § 1406(a)[6] must govern transfer. *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607-08 (7th Cir. 2003); *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522-23 (5th Cir. 2001); *Russo v. Ballard Med. Prods.*, 352 F. Supp. 2d 177, 182 (D.R.I. 2005)("[H]aving upheld the forum selection clause, this Court finds that in the interest of justice, transfer of this matter to Utah

---

[6] 28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the *wrong* division or district shall dismiss, *or if it be in the interest of justice, transfer* such case to any district or division in which it could have been brought. (emphasis added).

pursuant to 28 U.S.C. § 1406(a) is most appropriate."); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *8 (S.D.N.Y. 2004);  *Roberson v. Norwegian Cruise Line*, 897 F. Supp. 1285, 1289 (C.D.Cal. 1995).  On the other hand, some courts have read *Stewart* expansively and deemed § 1404(a)[7] controlling for all transfers based on a forum selection clause (so long as venue is proper under § 1391(a)).  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877-79 (3rd Cir. 1995); *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 155-56 (D.D.C. 2008); *BHP Int'l Inv., Inc. v. Online Exch., Inc.*, 105 F. Supp. 2d 493 (E.D.Va. 2000)(compiling cases).  The *BHP* decision based its discussion of a § 1404(a) transfer on the assumption that the forum selection clause did not render venue improper, however.  105 F. Supp. 2d at 497-98.  After the Fourth Circuit's decision in *Sucampo*, this assumption is no longer tenable.  471 F.3d at 550-51.  Thus, with the Fourth Circuit silent on the procedural basis for transfer, the majority of persuasive precedent favors the application of § 1406(a).

Additionally, when a forum selection clause is enforceable, an application of § 1404(a) would be impractical.  For example, in the Fourth Circuit, if a forum selection clause is enforceable, then dismissal is appropriate under Rule 12(b)(3).  *Sucampo*, 471 F.3d at 550.  If a court denies transfer, the case will be dismissed, and the defendant will no longer be a litigant.  Thus, the central inquiry for transfer is the effect on the plaintiff, which is the crux of a § 1406(a) analysis.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)(holding that purpose of § 1406(a) was to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions" for reasonable filing errors).

This Court now adopts the following two procedural principles, which will govern the analysis

---

[7] § 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer *any* civil action to any other district or division where it might have been brought." (emphasis added).

of Access2Go's Motion to Dismiss, or in the alternative, Motion to Transfer: (1) the forum selection clause, if enforceable under *M/S Bremen*, per se renders venue improper in the Eastern District of Virginia, and (2) even if dismissal is appropriate under Rule 12(b)(3), this Court has the discretion under § 1406(a) to transfer the action, if it is "in the interest of justice."

### 1.  Standard of Review

In the Fourth Circuit, Federal Rule of Civil Procedure 12(b)(3) is the correct procedural vehicle for bringing a motion to dismiss based on improper venue under a forum selection clause. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).  Under Rule 12(b)(3), the court may consider evidence outside the pleadings, and "the pleadings are *not* accepted as true, as would be required under a Rule 12(b)(6) analysis."  *Id.* at 549-550 (emphasis added). Without an evidentiary hearing, however, "the trial court must 'draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.'" *Essex Ins. Co. v. MDRB Corp.*, 2006 WL 1892411, at *2 (D.Md. 2006)(quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003)); *see also Fixture Specialists, Inc. v. Global Constr. Co.*, 2007 WL 3468997, at *1 (E.D.Va. 2007).  Finally, this Court will apply federal law to resolve whether the forum selection clause is enforceable.[8]

---

[8] The federal circuits are divided on the issue of whether state or federal law governs whether a forum selection clause is enforceable.  The majority position, however, applies federal law.  *See ADT Sec. Services, Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1201-04 (D.Colo. 2006)(collecting cases as follows: (a) Second, Fifth, and Ninth Circuits have expressly adopted federal law; (b) Tenth and Eleventh Circuits apply federal law without explanation; (c) Third Circuit has expressly adopted state law; and (d) remainder of Circuits are silent on the issue). Within the Fourth Circuit, although the District of Maryland applies state law, the majority of the district courts hold that federal law governs enforcement of forum selection clauses.  *See Gita Sports Ltd. v. SG Sensortechnik GMBH & Co. KG*, 560 F. Supp.2d 432, 437-38 (W.D.N.C. 2008)(collecting cases); *Red Light, LLC v. Am. Traffic Solutions, Inc.*, 2006 WL 463569, at *2 (D.S.C. 2006)("Federal law governs a district court's decision to enforce or not enforce a forum

### 2.  Analysis of Whether Forum Selection Clause is Enforceable

A forum selection clause is presumptively valid and enforceable unless the challenger can "clearly show" that enforcement would be "unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972).  The clause is unreasonable if (1) it was "induced by fraud or overreaching;" (2) the complaining party will be "deprived of his day in court because of the grave inconvenience or unfairness of the selected forum;" (3) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy;" or (4) enforcement of the clause "would contravene a strong public policy of the forum state." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)(quotations omitted).

### a. Fraud or Overreaching

Hipage asserts that the forum selection clause is not enforceable due to fraudulent inducement of the entire Service Agreement, but this argument is not persuasive.  First, Hipage did not allege fraud in the Complaint.[9]    Second, even if the Complaint had attempted to allege fraud, the facts would fail to establish a prima facie case.  In particular, "it is essential that the defrauded party demonstrates the right to *reasonably* rely upon the misrepresentation." *Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 194 (Va. 1993).  *See also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999).  Furthermore, the Fourth Circuit has held that "there [can] be no reasonable reliance on the oral statements in the face of plainly contradictory contractual

_____

selection clause.").

[9]  Although the Complaint alleges facts in Paragraphs 16 and 17 that *could* be construed as Hipage's reliance on a misrepresentation, Count I does not mention fraud.  Compl. ¶¶ 16-17. Furthermore, plaintiff's counsel "submitted" at oral argument that Hipage did not plead fraud with sufficient specificity.  *See* Fed. R. Civ. P. 9(b).

language." *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990).   In the present case, the signed Service Agreement directly contradicts the alleged oral statement by Access2Go's agent to Unger (that the contract would not be binding).   As a matter of law, therefore, Hipage could not have reasonably relied on the oral representation.

Hipage also contends that Unger lacked authority to enter into a binding agreement, and thus, the forum selection clause is unenforceable.   The Court finds this argument equally unpersuasive. *Bremen* and its progeny of cases have set a high bar for challenging the presumptive validity of a forum selection clause, and Hipage has failed to cite a single case in which a court has refused to enforce such a clause on the grounds of agency law principles.   Unger's lack of authority to contract does not rise to the high bar of "fraud or overreaching." *Lloyd's of London*, 94 F.3d at 928.

### b. Grave Inconvenience

Hipage limits its discussion of inconvenience to the location of potential witnesses, which is insufficient to challenge enforcement of a forum selection clause.   The Supreme Court held "that even where the forum clause establishes a remote forum for resolution of conflicts, the party claiming unfairness should bear a heavy burden of proof." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991)(quotations omitted).   Moreover, the Fourth Circuit has clearly stated that the expense of transporting witnesses is not sufficient to preclude enforcement of a forum clause. *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991)("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away.")   In *Carnival Cruise Lines*, the U.S. Supreme Court held that forcing two individuals living in the state of Washington to litigate their claim in Florida, even though none of the relevant events took place in Florida, did not violate fairness standards.   499 U.S. at 595.   Here, Hipage is a sophisticated

business that signed an agreement, which designates Illinois as the exclusive forum. The distance for Hipage and its witnesses to travel is significantly less than the distance between Washington and Florida. Thus, under *Carnival Cruise Lines* and *Brock*, Hipage has "not satisfied the heavy burden of proof . . . required to set aside the clause on grounds of inconvenience." *Id.*

### c. Fundamental Unfairness

Hipage does not argue that enforcement of the clause is fundamentally unfair to the point of depriving Hipage of a remedy.[10]

### d. Public Policy

Enforcement of the forum selection clause will not contravene any strong public policy of the state of Virginia. Hipage asserts that Virginia courts are better equipped to apply Virginia law, but this argument lacks merit. Even assuming that Virginia law would apply to the action in Illinois,[11] the U.S. District Court for the Central District of Illinois is competent to apply Virginia law. Furthermore, the Fourth Circuit has enforced a forum selection clause, even where the contracted forum was England, and English law was arguably at odds with certain United States securities laws. *Lloyd's of London*, 94 F.3d at 928-32. Hipage has not identified any practices of the Illinois courts that would offend the public policy of Virginia. This, coupled with the lack of fraud, grave inconvenience, and fundamental unfairness, compels this Court to enforce the forum selection clause. Under *Sucampo*, a dismissal under Rule 12(b)(3) would be an appropriate method of enforcement.

---

[10]   In fact, Hipage is not seeking a remedy in the traditional sense, but rather, a predetermination of an affirmative defense to Access2Go's action in Illinois.

[11]   Hipage states that "the parties have agreed that Virginia law governs this matter," (Pl.'s Br. at 12), but Access2Go counters that the choice of law provision in the Service Agreement mandates an application of Illinois law. (Def.'s Reply Br. at 6.)

14

471 F.3d at 550.  Next, however, this Court will examine whether transfer is preferred over dismissal.

### 3.  Transfer Under § 1406(a)

The forum selection clause renders venue improper in Virginia, and as a result, § 1406(a) governs the court's consideration of a transfer:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, *or if it be in the interest of justice, transfer* such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a)(emphasis added).  Specifically, the "interest of justice" requires "removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits."  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).  In *Goldlawr*, the Supreme Court reversed dismissal and mandated a transfer in order to circumvent the expired statute of limitations and avoid forfeiture of plaintiff's causes of action.  *Id.* at 466 (identifying forfeiture of claims as the "typical example of the problem sought to be avoided").  Hipage does not face a statute of limitations, however, nor forfeiture of its rights by any means.  Rather, the Illinois lawsuit includes all the issues presented by Hipage's declaratory action in Virginia.  Thus, "an expeditious and orderly adjudication" of the contract dispute on the merits is already underway.  As a result, transfer is not appropriate.

## B.  Jurisdiction Over Declaratory Judgment

### 1.  Legal Standard for Declaratory Judgments

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought."[12]   The U.S. Supreme Court has stated, "[s]ince

its inception, the Declaratory Judgment Act has been understood to confer on federal courts *unique*

*and substantial discretion* in deciding whether to declare the rights of litigants."   *Wilton v. Seven*

*Falls Co.*, 515 U.S. 277, 286 (1995)(emphasis added).   Thus, a federal district court has "'great

latitude in determining whether to assert jurisdiction over declaratory judgment actions,' but should

refuse to entertain a declaratory judgment only for good cause."   *First Nationwide Mortgage Corp.*

*v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 672 (D.Md. 2002)(quoting *Aetna Cas. & Surety Co.*

*v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

## 2.  Analysis

A declaratory judgment "is appropriate when the judgment will serve a useful purpose in

clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding."   *Penn-America Ins. Co. v.*

*Coffey*, 368 F.3d 409, 412 (4th Cir. 2004)(quotations omitted).   The Supreme Court has counseled

that "[t]he factors relevant to wise administration here [in the context of declaratory judgments] are

equitable in nature."   *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952).   For

example, the Middle District of North Carolina  collected cases and observed that "a balance must

be struck between the . . . [potential plaintiff's] traditional interests in choice of forum, timing, and

avoiding a race to the courthouse . . . [and a potential defendant's] interest in being relieved from the

---

[12] Although Hipage originally filed this declaratory action in state court, the subsequent removal to federal court brings the action within the ambit of the Declaratory Judgment Act.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)(holding that federal courts with diversity jurisdiction shall apply the state substantive law, but the federal procedural law) and *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227 (1937)(stating that "the operation of the Declaratory Judgment Act is procedural only").

uncertainty and insecurity arising from a controversy." *State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426, 430 (M.D.N.C. 1988).  Although the case law does not present a uniform list of factors for a district court to decide whether to exercise discretion to hear a declaratory judgment action,[13] the following factors feature prominently: (1) whether the action serves the purpose of the Declaratory Judgment Act; (2) whether the action constitutes procedural fencing; (3) judicial efficiency; and (4) fairness to the parties.  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003); *Learning Network v. Discovery Commc'ns*, 11 Fed.Appx. 297, 301 (4th Cir. 2001); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D.Ill. 2002); *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 760-62 (E.D.Va. 1986).  This Court will address each factor in turn.

### a. Purpose of the DJA

The purpose of the Declaratory Judgment Act is to "allow[] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).  This purpose can be parsed into two key principles.  First, if a suit for actual relief has already been filed, then the "insecurity" of looming litigation does not exist.  *Id.*  As a result, the courts disfavor a subsequent action for declaratory judgment that

---

[13] When the declaratory judgment action is in federal court and the corresponding action is in *state* court, the Fourth Circuit has provided a consistent list of four factors: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping."  *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004)(citations omitted).  In the present case, both Hipage's and Access2Go's suits have been removed to federal court, which renders the first and third factors moot.

would "interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)(quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). In the present case, Access2Go filed its action for breach of contract in Illinois *before* Hipage filed its action for declaratory judgment in Virginia. Furthermore, Access2Go's action encompasses each issue presented by Hipage's action. Thus, Hipage has failed to heed the Fourth Circuit's warning that a district court should not entertain declaratory judgment actions "for the purpose of trying issues involved in cases already pending." *Quarles*, 92 F.2d at 324.

Second, declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593-94 (4th Cir. 2004). In other words, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." *MedImmune, Inc. v. Genentech, Inc*, 549 U.S. 118 (2007)(citations omitted). Here, because Hipage has already repudiated the Service Agreement, there is no guidance that this Court can offer to steer Hipage's conduct away from a breach of contract. *See Trull v. Smolka*, 2008 WL 4279599, at *8 (E.D.Va. 2008)("[A] declaratory judgment is unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been committed.")(quotations omitted); *Publ'ns Int'l, Ltd. v. McRae*, 953 F. Supp. 223, 224 (N.D.Ill. 1996)("Its [declaratory judgment's] purpose is to avoid accrual of avoidable damages to one not certain of his rights . . ."). In *McRae*, a book publisher failed to ship all the contracted books to a wholesaler, then filed an action for declaratory judgment on the status of the parties' rights. 953 F. Supp. at 224. The district court dismissed the declaratory judgment action, because "[w]hatever damages there may be have already accrued." *Id.* Similarly, the damages arising from Hipage's business dealings with Access2Go have already accrued, and thus, the action for

declaratory judgment is untimely.

The Court therefore finds that Hipage's declaratory action is not consistent with the purpose of the Declaratory Judgment Act, and this factor weighs heavily in favor of dismissal.

### b. Procedural Fencing

It is well established that courts disfavor "procedural fencing," such as forum shopping and races to the courthouse. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir.1994)*, overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). *See also Coffey*, 368 F.3d at 412; *Yoder*, 630 F. Supp. at 760-62. In *Yoder*, cited by Hipage, an investment broker had committed fraudulent acts at the expense of a client. 630 F. Supp. at 757-58. The broker filed an action for declaratory judgment in Illinois in anticipation of the client filing suit for damages. *Id.* When the client did file suit in Virginia, the U.S. District Court for the Eastern District of Virginia refused to recognize the broker's forum shopping in Illinois. The court denied dismissal and declared that "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Id.* at 761 (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2nd Cir. 1978), *cert denied*, 440 U.S. 908 (1979)). In the present case, Hipage strays even farther from the proper path. Hipage filed for declaratory judgment in Virginia *after* Access2Go filed suit for breach of contract in Illinois. Thus, Hipage attempted to "wrest[] the choice of forum from the 'natural' plaintiff," which runs directly contrary to the prevailing view, which is "not to give the alleged wrongdoer a choice of forum." *McRae*, 953 F. Supp. at 224.

Hipage contends that this Court is better equipped to try the issues under Virginia law, but this argument is not persuasive. First, the forum selection clause is enforceable, and thus, the choice of law provision, which elects that Illinois law governs the dispute, likely is also enforceable. Even

assuming that Virginia law governs, however, the U.S. District Court for the Central District of Illinois is certainly capable of applying Virginia law.  Moreover, the determination of whether Virginia or Illinois "is the better forum is a question that should be decided by the court chosen by the putative[14] plaintiff."  *Watkins Strategy & Res. Group, LLC v. WLC, LLC,* 433 F. Supp. 2d 778, 784 (S.D. Miss. 2006).   Hipage, "as the putative defendant, did not have the right to make this determination."  *Id.*  There is no valid justification for Hipage's attempt to forum shop, and as a result, this "procedural fencing" militates in favor of dismissal.

### c.  Judicial Economy

Judicial economy is not served by trying "a controversy by piecemeal, or [trying] particular issues without settling the entire controversy or [interfering] with an action which has already been instituted."  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)(citations omitted).  First, Hipage attempts to wrest the choice of forum from Access2Go, thus interfering with Access2Go's Illinois lawsuit, "which has already been instituted."  *Id.*  Second, Hipage's action for declaratory judgment seeks a determination that no contract existed.  If this Court decided against Hipage on the merits, however, another court would have to address the issues of breach and damages.   Thus, the Illinois lawsuit for breach of contract "provides a broader and more comprehensive forum for resolving the entire dispute between the parties."  *First Nationwide*, 219 F. Supp. 2d at 674.  *See also Watkins Strategy,* 433 F. Supp. 2d at 782 (finding judicial economy better served by limiting litigation to the lawsuit that is "more inclusive of all issues surrounding the dispute between the parties").

---

[14] In general, a "putative plaintiff" is an alleged victim, whereas the "putative defendant" is the alleged wrongdoer.  For example, the party who allegedly breached the contract would be the putative defendant, even if this party filed an action for declaratory judgment.

Hipage requests, in the alternative, that this Court stay the Virginia action for declaratory judgment until the Illinois court rules on the motion to dismiss for lack of personal jurisdiction. A stay, however, would not serve judicial economy. At oral argument, Hipage conceded that if the Illinois lawsuit were dismissed for lack of personal jurisdiction, dismissal of this declaratory judgment action would be appropriate. Furthermore, if the Illinois action proceeded to the merits, dismissal of the declaratory judgment action would be even more appropriate. For one, "it seems wasteful and extravagant for litigants to be required to proceed simultaneously in two different forums," where the issues are the same. *Childers Food, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.*, 203 F. Supp. 794, 796 (W.D.Va. 1962). Even more troubling, however, is the potential for two conflicting determinations of whether a contract existed between Hipage and Access2Go. A stay of the proceedings, therefore, is not appropriate.

Judicial economy is not served by allowing Hipage's action for declaratory judgment to proceed, and thus, this factors weighs in favor of dismissal.

### d.  Fairness to the Parties

Hipage argues that a transfer of this action to Illinois, or a dismissal, is inappropriate on grounds of inconvenience, but this argument lacks merit. If this Court orders either a dismissal or transfer of the declaratory judgment action, Hipage will not suffer added inconvenience for the simple reason that Hipage is already party to the lawsuit in Illinois. Unless the suit in Illinois is dismissed, Hipage and its witnesses will be required to travel to Illinois, regardless of what this Court decides. Furthermore, even if the Illinois suit is dismissed, Hipage has already conceded that dismissal of this action would be appropriate. Thus, a dismissal of the declaratory judgment action would not impose further inconvenience on Hipage. As a result, the consideration of fairness is a neutral factor in the

21

analysis. *See Watkins Strategy,* 433 F. Supp. 2d at 784.

Based on the foregoing factors, it is clear that a declaratory judgment would not serve "a useful purpose in clarifying and settling the legal relations in issue." *Coffey*, 368 F.3d at 412. Accordingly, the Court declines to exercise its authority to hear the action for declaratory judgment and concludes that a dismissal is appropriate.

## III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that Access2Go's Motion to Dismiss be GRANTED.

## IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(c), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).


_____ /s/
Tommy E. Miller
United States Magistrate Judge


Norfolk, Virginia
October 29, 2008

23

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the

following:


Richard H. Ottinger, Esq.
Vandeventer Black, LLP
500 World Trade Center
Norfolk, Virginia 23510


M. Scott Hart, Esq.
Troutman Sanders, LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462


          Fernando Galindo, Clerk


        By_____
           Deputy Clerk
          October   , 2008